UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARTER COMMUNICATIONS ENTERTAINMENT I, LLC d/b/a CHARTER COMMUNICATIONS,<br><br>    Plaintiff,<br><br>v.<br><br>RICHARD A. LENIHAN,<br><br>    Defendant. | Civil Action No.<br>04-40213-FDS |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION TO DISMISS**

**SAYLOR, J.**

**I.   Background**

This is a case alleging theft of cable-television programming. Charter Communications, a cable operator, alleges that defendant Richard A. Lenihan purchased a cable theft device designed to defeat scrambling or security measures and thereby obtain premium cable-television services for free.

According to the complaint, Charter obtained business records of TKA Electronics, a seller of illegal cable theft devices, in a case in the District of Nebraska, *AT&T Broadband v. TKA Electronics, Inc.*, 8:02-00429 (D. Neb. Sept. 17, 2002). Those records indicated that Lenihan had ordered and purchased a cable theft device on August 9, 2001. Charter alleges that Lenihan used this cable theft device to receive its cable services illegally in violation of 47 U.S.C. § 553(a)

1

(theft of cable transmissions) and 47 U.S.C. § 605(a) (theft of radio transmissions).

The complaint in this matter was filed on October 22, 2004. The complaint does not indicate when Charter became aware that Lenihan may have obtained a cable theft device, but it presumably occurred after the filing of the Nebraska lawsuit, which occurred on September 17, 2002. Lenihan has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that the suit is barred by the applicable statute of limitations and that 47 U.S.C. § 605(a) does not apply to the interception of communications carried over coaxial cable.

## II.   Standard of Review

A court may not dismiss a complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint, and matters of which judicial notice can be taken. *Nollet v. Justices of the Trial Court of Mass.,* 83 F. Supp. 2d 204, 208 (D. Mass. 2000), *aff'd,* 248 F.3d 1127 (1st Cir. 2000). Furthermore, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000).

## III.   Analysis

### A.   Applicability of 47 U.S.C. § 605

Charter alleges that Lenihan violated 47 U.S.C. §§ 553 and 605 when he purchased and used a cable theft device. In his motion to dismiss, Lenihan contends that the § 605 claims should be dismissed because § 605 "does not expressly bar the interception of cable communications

carried over coaxial cable."

Section 553 provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system." 47 U.S.C. § 553(a)(1). Section 605, by contrast, prohibits the unauthorized interception or reception of *radio* communications. 47 U.S.C. § 605(a). Although Charter does not explain why § 605 is applicable to this case, cable operators in other cases have sought relief pursuant to § 605 under the theory that cable transmissions at issue had been previously transmitted to the cable operator via satellites. *See, e.g., International Cablevision, Inc. v. Sykes*, 75 F.3d 123 (2d Cir. 1996).

For the reasons set forth in the Court's memorandum and order in *Charter Communications Entertainment I, LLC v. Thomas a/k/a Tom Burdulis*, slip op. 04-40098 (March 22, 2005), and *Charter Communications Entertainment I, LLC v. Miguel a/k/a Mike Sanchez,* slip op. 01-40190 (April 13, 2005), the Court concludes that § 605 does not apply to the theft of communications transmitted over a cable wire. Applying § 605 to cable theft would require the Court to ignore the plain meaning of the statutory text and strain its definitions beyond their ordinary meaning. The change in the form of transmission of the communication, from an airborne signal to a signal traveling over a cable wire, changes the applicability of the statute; when the communication is stolen as it is being transmitted over a cable wire, § 553, not § 605, applies. Accordingly, the counts alleging injury under § 605 are dismissed.

### B. Statute of Limitations

#### 1. Introduction

There is no federal statute of limitations directly applicable to a claim under § 553. As a general matter, when there is no applicable federal statute of limitations, courts are required to

apply the most closely analogous state-law limitations period. *North Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995); *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 158-59 (1983).

There are two exceptions to this general rule. First, Congress created a general, four-year statute of limitations for federal statutes passed after December 1, 1990, that do not contain a specific limitations period. *See* 28 U.S.C. § 1658. Because § 553 was enacted in 1984, this exception does not apply. Second, courts may look to an analogous federal statute, rather than a state statute, when the application of the state statute would "frustrate or interfere with the implementation of national polices," *Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 367 (1977), or be "at odds with the purpose of operation of federal substantive law," *DelCostello*, 462 U.S. at 161. The latter exception is very narrow, and is appropriately invoked only "'when a rule from elsewhere in federal law clearly provides a closer analogy than available state statute, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking.'" *Reed v. United Transp. Union,* 488 U.S. 319, 324 (1989) (quoting *DelCostello*, 462 U.S. at 172).

A review of cable-theft cases brought under either § 553, § 605, or both, reveals that courts have borrowed statutes of limitations from a variety of sources. Some courts have looked to analogous state statutes. *See, e.g., Kingvision Pay-Per-View, Corp. v. 898 Belmont, Inc.*, 366 F.3d 217, 225 (3d Cir. 2004) (state piracy statute); *DirecTV, Inc. v. Wright*, 350 F. Supp. 2d 1048, 1054 (N.D. Ga. 2004) (state theft-of-telecommunications statute); *Kingvision Pay Per View, Ltd. v. Wilson*, 83 F. Supp. 2d 914, 919 (W.D. Tenn. 2000) (state conversion statute). Others have looked to federal statutes. *See, e.g., Prostar v. Massachi*, 239 F.3d 669, 677 (5th

4

Cir. 2001) (Copyright Act); *In re cases filed by DirecTV, Inc.*, 344 F. Supp. 2d. 647, 661 (D. Ariz. 2004) (Electronic Communications Privacy Act); *Kingvision Pay Per View, Ltd. v. Boom Town Saloon, Inc.*, 98 F. Supp. 2d 958, 967 (N.D. Ill. 2000) (Copyright Act).

If there is an analogous state statute, "there is no reason to explore federal law, unless the state limitations period impedes the implementation of national policies, is at odds with the purpose or operation of federal substantive law, or is demanded by the practicalities of litigation." *898 Belmont, Inc.*, 366 F.3d at 221 (citing *Reed*, 488 U.S. at 327). The Court will therefore first examine the potentially applicable state statutes.

### 2. **Applicability of State Statutes of Limitation**

Massachusetts does not have an civil statute analogous to § 553 that provides aggrieved parties with a private right of action for theft of cable services. *Compare 899 Belmont*, 366 F.3d at 224-25 (noting Pennsylvania cable piracy statute mirrors the structure and penalties of the Federal Communications Act, which contains § 553).[1] The question, then, becomes which state cause of action is most analogous to § 553 for purposes of applying the statute of limitations.

Lenihan contends that the Court should apply the limitations period set forth in Mass. Gen. Laws ch. 260, § 5, which provides a one-year period of limitations for "actions for penalties or forfeitures under penal statutes." He asserts that where a statute imposes damages without any requirement of actual harm and no requirement that the damages be proportional to the harm, the statute should be deemed penal for purposes of the application of Mass. Gen. Laws ch. 260, § 5. Charter contends that the action is remedial, not penal, and is more analogous to one for

---

[1] Massachusetts does, however, have two criminal statutes that impose fines and imprisonment on those whose steal telecommunications services. *See* Mass. Gen. Laws ch. 166, §§ 42A, 42B.

conversion. Charter therefore argues that the three-year limitations period in Mass. Gen. Laws ch. 260, § 2A should be applied.

At least two district courts have found that § 553 is not a penal statute. *See Boom Town Saloon,* 98 F. Supp. 2d at 967; *Kingvision Pay Per View, Ltd. v. Bowers*, 36 F. Supp. 2d 915, 918 (D. Kan. 1998).[2] Generally speaking, the difference between penal and remedial statutes lies in the nature of the damages allowed. Although a firm definition is somewhat elusive, courts seem to be in general agreement that penal statutes impose damages that are not proportional to the harm suffered. *See, e.g., Boom Town Saloon*, 98 F. Supp. 2d at 966 (finding that a statute permitting statutory damages was remedial because damages were intended to be proportional to actual damages); *Lynch v. Signal Fin. of Quincy*, 367 Mass. 506, 507 (1975). At least two circuits have used a three-part test to determine if a statute is remedial. *See Smith v. No. 2 Galesburg Crown Fin. Corp.,* 615 F.2d 407, 415 (7th Cir. 1980), *overruled on different grounds by Pridegon v. Gates Credit Union*, 683 F.2d 182 (7th Cir. 1982); and *Murphy v. Household Fin. Corp.*, 560 F.2d 206, 209 (6th Cir. 1977). The test examines "1) whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public; 2) whether recovery under the statute runs to the harmed individual or to the public; and 3) whether the recovery authorized by the statute is wholly disproportionate to the harm suffered." *Id.*

The application of those factors suggest that § 553 is remedial, not penal. First, § 553 appears to have been intended to redress injuries to the cable television industry. *See TKR Cable*

---

[2] In *Boom Town Saloon*, the court looked to analogous decisions where courts found that the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*., and the Copyright Act, Title 17 of the United States Code, were not penal despite the fact that they contained provisions for actual and statutory damages. 98 F. Supp. 2d at 965. The *Boom Town Saloon* court also noted that courts deciding cases under § 553 "routinely attempt to tailor [statutory damages] to provide some rough approximation of the plaintiff's actual or threatened losses." *Id*. at 966.

6

*Co. v. Cable City Corp.*, 267 F.3d 196, 203-04 (3d Cir. 2001).  Although the public is generally harmed by cable theft, in the form of higher prices passed along to the consumer, this harm was not the main purpose behind the statute.  *See id.*  Second, § 553 permits "any person aggrieved" to bring a civil action and recover damages personally, not on behalf of the public.

It is a closer question whether the damages authorized by the statute are "wholly disproportionate to the harm suffered."  *Murphy*, 560 F.2d at 209.  Lenihan correctly observes that § 553 has no express provision that the harm be proportional to the injury suffered.  However, this Court has recently held in *Burdulis* and *Sanchez* that statutory damages should be a reasonable estimate of actual damages.  In *Burdulis*, the Court cited its agreement with *Comcast of Massachusetts I, Inc. v. Naranjo*, where Judge Keeton found that the structure and language of § 553 indicated that actual and statutory damages are "coordinate alternatives" with no difference or preference between them.  303 F. Supp. 2d 43, 48 (D. Mass 2004).  Accordingly, *Burdulis* and *Sanchez* both held that, to the extent possible, statutory damages should be calculated to approximate actual damages.  For these reasons, the Court finds that § 553 is not a penal statute for purposes of applying the statute of limitations.

This action appears to be most closely analogous to an action for conversion.  Massachusetts defines conversion as the intentional or wrongful exercise of dominion and control over the personal property of another without a present right to possession.  *See Third Nat'l Bank of Hampden County v. Continental Ins. Co.*, 388 Mass. 240, 244 (1983); *Abington Nat'l Bank v. Ashwood Homes, Inc.*, 19 Mass. App. Ct. 503, 506 (1985).  Other federal courts have found cable theft to be analogous to the tort of conversion.  *See e.g. Prostar*, 239 F.3d at 675; *Wilson* 83 F. Supp. 2d at 919; *Bowers*, 36 F. Supp. 2d at 918.  The Court agrees that conversion is the closest

state analogue because Lenihan's alleged acts could be fairly described as the intentional or wrongful exercise of dominion and control of Charter's cable transmissions. Accordingly, the statute of limitations applicable to conversion actions, Mass. Gen. Laws ch. 260, § 2A, should apply.

### 3. Applicability of the Federal Statute of Limitations Exception

The Court must next consider whether adopting the statute of limitations applicable to Massachusetts conversion actions would "frustrate or interfere with implementation of national policies," *Occidental Life Ins. Co. of Cal.,* 432 U.S. at 367, or be "at odds with the purpose or operation of federal substantive law," *DelCostello*, 462 U.S. at 161.[3] Neither the Supreme Court nor the First Circuit has ruled on the applicability of the federal exception to claims brought for cable-television theft. Furthermore, there is conflicting precedent from the Fifth and Third Circuits on the issue.

In *Prostar*, the Fifth Circuit elected to use the federal Copyright Act's three-year limitations period rather than the one-year period applicable to state actions for conversion. 239

---

[3] The Supreme Court has emphasized that borrowing a limitations period from a federal statute is a narrow exception. The two leading cases where the court permitted the use of a federal limitations period highlight the limited nature of the exception. In *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,* the Court held that civil actions under the Racketeer Influenced and Corrupt Organizations Act ("RICO") should be excepted from the general rule that state law should provide the statute of limitations for federal statutes without express limitations period. 483 U.S. 143, 150 (1987). The Court stressed that RICO cases *require* both a nexus to interstate or foreign commerce and a pattern of racketeering, making choosing the appropriate state statute of limitations more difficult. *Id.* at 153-54.

In *DelCostello*, plaintiff brought suit against his employer under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for wrongful termination and against his union for breach of its duty of fair representation. 462 U.S. at 161. The fair representation claim, which involved how the union handled the arbitration proceedings between the union and the employer, had no close state law analog. *Id.* at 165. The potentially applicable state limitations periods, borrowed from state arbitration statutes, provided a very short limitations period (10 to 90 days) that the court held failed to provide adequate time for an aggrieved employee to sue under both § 301 and the fair representation doctrine. *Id.* at 166.

F.3d at 677. The court found that application of fifty potentially different state statutes of limitations would frustrate the implementation of the Federal Communications Act ("FCA"), which includes §§ 553 and 605, because cable companies engaging in multi-state activities would be required to make "fifty separate decisions" in their efforts to investigate and pursue cable theft. *Id.* at 676-77. Borrowing from federal law would create uniformity and facilitate "resolution of the national problems" addressed by the FCA. *Id.* at 677.

The Third Circuit disagreed with that conclusion in *898 Belmont*. 366 F.3d at 223. Specifically, the court noted that the *Prostar* court appeared to "conflate, or at least fail[ed] to distinguish between, the need for uniformity in construing the *type* of statute chosen for limitations purposes and uniformity in the *length* of the limitations period adopted." *Id*. at 224 (emphasis added). The court also dismissed the reasoning that uniformity and the national nature of the cable industry warranted a federal limitations period, indicating that these concerns were "only relevant insofar as they are embodied in [§ 553]" and noting that "violations of [§ 553] . . . are particular acts which are pursued in the locations where they occur—as was done in the present case." *Id*. The court went on to adopt the two-year period of limitations found in the Pennsylvania cable-piracy statute, noting the piracy statute's close similarity in purpose and structure to § 553. *Id.* at 224-25.[4]

---

[4] Courts have articulated three issues to consider when determining whether the limitations period from an analogous federal statute should be adopted to further national uniformity. First, there is no general preference for uniformity, even to avoid forum shopping. *North Star,* 515 U.S. at 36. Second, creating uniformity in the limitations period of federal laws with similar purposes is not a reason to adopt a federal limitations period. *Reed*, 488 U.S. at 327. Third, there are two types of uniformity: uniformity in the type of statute chosen for limitations purposes and uniformity in the length of the limitations period. *See 898 Belmont*, 366 F.3d at 222 (noting that the Supreme Court in *Wilson v. Garcia*, 471 U.S. 261, 268-71 (1985), determined that claims under 42 U.S.C. § 1983 should be uniformly characterized as tort actions and an appropriate statute of limitations should be borrowed in each state).

This Court agrees with the Third Circuit's analysis in *898 Belmont*. For purposes of actions brought under § 553, a cable-television company is not significantly different from other interstate businesses that are required to contend with varying state statutes of limitations as applied to federal causes of action. The majority of the cases brought under § 553 appear to involve sellers of illegal cable decoders, users of illegal cable decoders, or people tampering with actual cable wires to illegally receive cable programming. The Court is not persuaded that the national nature of the cable industry or the potentially national scope of cable theft requires uniformity of limitations period to further the purpose or operation of the law, particularly in light of the Supreme Court's explicit statement that there is no general preference for national uniformity. *See North Star*, 515 U.S. at 37.

The Court is similarly unable to conclude that adopting the period of limitations for conversion actions would frustrate or run contrary to the national policies of the cable television laws. The three-year period under the analogous Massachusetts statute provides the cable industry, or any other person aggrieved, with more than ample time in which to file suit.

### 4.     Accrual of the Cause of Action

The next question is when Charter's cause of action accrued for purposes of the statute of limitations. Under the Massachusetts discovery rule, a cause of action does not accrue until a plaintiff "discovers, or reasonably should have discovered, that she may have been injured as a result of the defendant's conduct." *Hoult v. Hoult,* 792 F. Supp. 143, 145 (D. Mass. 1992) (citing *Riley v. Presnell*, 409 Mass. 239, 244 (1991)); *see also Saenger Org., Inc. v. Nationwide Ins. Licensing Assocs., Inc.* 119 F.3d 55, 65 (1st Cir. 1997).

There is no specific allegation in the complaint stating when Charter first knew of

10

Lenihan's alleged theft.[5]  Based on business records recovered as a result of the *TKA Electronics* case, which was filed on September 17, 2002, Charter alleges that Lenihan purchased the illegal cable device on August 9, 2001.

In considering a motion to dismiss, the court must draw all reasonable inferences in the plaintiff's favor.  From this posture, it is reasonable to infer that Charter did not learn of the alleged theft, and had no reason to believe that the theft had occurred, until sometime after September 17, 2002.

### 5. Conclusion

Because the cause of action accrued after September 17, 2002, and the complaint was filed on October 22, 2004, the suit is timely under the three-year period of limitations set forth by Mass. Gen. Laws ch. 260, § 2A.  Accordingly, the motion to dismiss on statute-of-limitations grounds is denied.

### Order

For the reasons set forth in the foregoing memorandum the Court ORDERS as follows:

1. The claims alleging injury pursuant to 47 U.S.C. § 605 are DISMISSED; and

2. The motion to dismiss is DENIED on statute-of-limitations grounds.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: June 9, 2005

---

[5] The Court notes that Charter submitted an affidavit with its opposition to the motion to dismiss suggesting that it learned of the theft on January 5, 2004.  Rather than relying on the affidavit and treating this as a motion for summary judgment under Rule 12(b), for present purposes the Court will simply disregard the affidavit.